Filed 2/7/24  P. v. Vargas CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

<table>
<tr><td>

THE PEOPLE,

    Plaintiff and Respondent,

v.

JUAN OMAR VARGAS,

    Defendant and Appellant.

</td><td>

F084820

(Super. Ct. No. 98M28905A)

**OPINION**

</td></tr>
</table>

<u>**THE COURT**</u>[*]

APPEAL from a judgment of the Superior Court of Madera County.  Dale J. Blea, Judge.

Robert Navarro, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lewis A. Martinez, and Amanda D. Cary, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*] Before Levy, Acting P. J., Detjen, J. and Franson, J.

## INTRODUCTION

Petitioner Juan Omar Vargas petitioned the superior court, pursuant to former section 1170.95 (now § 1172.6) of the Penal Code,[1] for resentencing on his conviction for first degree murder (§ 187). The superior court conducted an evidentiary hearing and denied the petition after finding beyond a reasonable doubt that petitioner was the actual killer and, alternatively, was a major participant in the underlying felony who acted with reckless indifference to human life.

On appeal, petitioner contends substantial evidence does not support the trial court's findings, and the court abused its discretion in failing to consider petitioner's youth at the time of the offense in determining whether he was eligible for relief. We agree that substantial evidence does not support the court's findings. Accordingly, we reverse.

## FACTUAL BACKGROUND

Our factual summary is taken from the transcript of the preliminary hearing for petitioner and his two codefendants, Rogelio Morales, Jr., and Jesus Ramos.

On December 28, 1997, at approximately 7:51 a.m., Madera County Sheriff's Deputy M. Schafer was dispatched regarding a suspicious vehicle in an orchard. Dispatch advised that the vehicle was seen in the orchard with the vehicle running and the lights on, but no suspects were in the area. Schafer arrived at the designated location approximately five to 10 minutes after being dispatched, and he saw a 1990 blue Buick Regal parked 20 to 30 meters into the orchard. The engine was running, the keys were in the ignition, and all exterior lights, including the headlights, were on. The heater was on and the interior of the car was excessively hot, indicating the heater had been running for

---

[1] Undesignated statutory references are to the Penal Code. Former section 1170.95 has been renumbered section 1172.6, with no change in text. (Stats. 2022, ch. 58, § 10.) We refer to the current section 1172.6 in this opinion.

a long time. Inside the vehicle and/or trunk, Schafer found a ceiling fan in its original box, a shopping cart, a Kodak camera still in its case, and a red umbrella.

Schafer ran the car's license plate through dispatch, and dispatch advised that the car was registered to Elizabeth Martinez. Dispatch advised Schafer of Martinez's address in the 200 block of High Street in the City of Madera. Schafer advised dispatch to send a Madera police officer to the residence to contact Martinez and find out why her car was in the orchard.

Madera Police Officer W. Webb was dispatched to Martinez's residence at approximately 8:30 a.m. Webb rang the doorbell and knocked on the door several times, but no one responded. Webb left a note for Martinez, advising her to contact the police department regarding her car. Dispatch advised Schafer that the officer was unable to contact Martinez because no one answered the door at her residence.

Around 2:20 p.m. that same day, Schafer went to Martinez's residence and attempted to contact her. He knocked on the door several times but received no answer. All the shades on the windows were closed, so he could not see inside the residence. Schafer left his business card on the front door with a message on the back for Martinez to contact the sheriff's office regarding her car. Schafer also observed a Madera police officer's business card on the front door. Schafer then advised dispatch to send a tow truck out to tow Martinez's vehicle.

On January 2, 1998, at approximately 8:09 a.m., Webb was dispatched to Martinez's residence to conduct a welfare check. Webb had received information that Martinez's friend was concerned about Martinez's well-being because she had not been answering her door. When Webb arrived at the residence, he spoke with Martinez's friend who said she had not been able to contact Martinez. She also handed Webb the note that he had left on Martinez's door and Schafer's business card that had also been left on the door.

3.

The front of the residence did not show any signs of forced entry. Webb jumped over the fence into the backyard and saw that glass on the back sliding door was broken. Webb advised dispatch of the situation and Officer T. Galovich was dispatched to assist him. The officers observed that the sliding glass door was open approximately seven to eight inches, but the screen door was secured and shut. The officers pulled the screen door out of the track, opened the sliding glass door, and announced that they were police officers. Once inside the residence, the officers found the deceased body of a female between 65 and 70 years old lying on the bed under the covers. The officers advised dispatch and the watch commander of their findings and secured the scene.

Detective E. Guzman was dispatched to Martinez's residence to investigate a suspected homicide. When he arrived, officers at the scene briefed him on what they had discovered in the residence. Guzman entered the backyard of the residence and saw the broken window on the sliding glass door. He entered the residence through the sliding glass door, which lead to the bedroom, where he saw a female lying face up on the bed with "some kind of a wound" to her left temple. He also saw a large red brick on the foot of the bed that matched other bricks he saw in the backyard. A few items appeared displaced within the bedroom and it appeared the room had "partially been gone through" or searched. Guzman later identified the woman as Martinez.

During his investigation, Guzman spoke with informants who provided information that led Guzman to speak with Morales, Ramos, and L.O. Guzman conducted several interviews with these individuals and testified at length to their statements.[2] Guzman also testified that he spoke with petitioner, who denied involvement in the homicide. Petitioner stated that Ramos, Morales, and L.O. had asked him to go with them on the night of the murder, but he was tired and stayed home.

---

[2] As we explain below, these statements are hearsay not subject to an exception. We therefore do not summarize them. (§ 1172.6, subd. (d).)

4.

Petitioner stated that he heard about the murder the next day, when Morales, Ramos, and L.O. again contacted him and told him Morales shot the victim while they were breaking into the home.

Petitioner's fingerprints were not found inside Martinez's house or her car and he was not found in possession of any of Martinez's belongings. Guzman acknowledged that the only evidence tying petitioner to the offenses was the statements of other individuals.

Four shell casings were found at the scene, one inside the bedroom and three outside the sliding glass door. One bullet was found in the victim. One bullet was found in the victim's headboard and another bullet was found in the closet.

## PROCEDURAL HISTORY

On February 2, 1999, the Madera County District Attorney filed a first amended information charging Morales, Ramos, and petitioner with the following offenses: first degree murder (§ 187, subd. (a); count one) with the special circumstance that the murder was perpetrated during the commission of robbery and burglary (§ 190.2, subd. (a)(17)); first degree robbery (§ 211; count two); first degree burglary (§§ 459, 462, subd. (a); count three); assault with a firearm (§ 245, subd. (a)(2); count four); unlawful taking or driving a motor vehicle (Veh. Code, § 10851, subd. (a); count five); and grand theft (§ 487, subd. (a); count six). As to counts two through four, the information alleged petitioner personally inflicted great bodily injury on an elderly victim (§ 12022.7, subd. (c)). As to counts one through four, the information alleged (a) the offenses were committed to benefit a criminal street gang (§ 186.22, subd. (b)(1)); (b) petitioner personally used a firearm (§§ 1203.06, subd. (a)(1), 12022.5, subd. (a)); (c) Ramos furnished a firearm to another for purposes of aiding, abetting or enabling the commission of a felony (§ 12022.4); (d) petitioner and Ramos carried a firearm on their persons or in a vehicle (§ 12021.5, subd. (a)); and (e) all three defendants were principals armed with a firearm (§ 12022, subd. (a)(1)).

5.

At some point, the gang enhancement allegations were stricken. On February 11, 1999, petitioner pled no contest to counts one through six pursuant to *People v. West* (1970) 3 Cal.3d 595. The felony-murder special circumstances to count one were dismissed. Petitioner admitted all remaining allegations. Petitioner initially was sentenced to an aggregate unstayed determinate term of 23 years, 8 months, and a consecutive unstayed indeterminate term of 25 years to life. However, an eight-month term on count 5 was subsequently stayed pursuant to section 654.

On May 1, 2019, petitioner filed a petition for resentencing pursuant to section 1172.6. Briefing followed. The parties initially agreed the court could take judicial notice of the minute order from the change of plea hearing, the change of plea form, and the transcript of the preliminary hearing. However, at a subsequent hearing, petitioner's counsel objected to the court taking judicial notice of the preliminary hearing transcript. Ultimately, the court determined that petitioner had established a prima facie case for relief and issued an order to show cause.[3] The court proceeded immediately to the evidentiary hearing. The court took judicial notice of the minute order from the change of plea hearing, petitioner's change of plea form, and the preliminary hearing transcript. The court also took judicial notice of several documents not contained in the record on appeal: a psychological report pertaining to petitioner prepared near the time of the preliminary hearing, a psychological report from an expert retained by Ramos, and the probation officer's reports as to both petitioner and Ramos.

Thereafter, the parties filed post-hearing briefs. The People argued the court could rely on the preliminary hearing transcript for purposes of the evidentiary hearing. Specifically, the People argued that petitioner's stipulation at the change of plea hearing

---

[3] The court issued an order to show cause as to both petitioner and Ramos. Ramos's petition for resentencing is not contained in the record on appeal and is not a subject of the instant appeal. Nonetheless, the court addressed both petitions simultaneously throughout the remainder of the proceedings.

6.

that the preliminary hearing transcript provided a factual basis for the plea constituted an adoptive admission of all facts essential to support a finding of guilt, and such facts were admissible on that basis. Additionally, the People argued that petitioner's admission of the firearm enhancement established that he was the actual killer.[4] Petitioner argued that the entirety of the preliminary hearing transcript was hearsay without an exception and, on that basis, could not be considered. Petitioner disputed that his admission to the factual basis constituted an adoptive admission of particular facts in the preliminary hearing transcript. Regardless, petitioner argued, the transcript was insufficient to establish petitioner's guilt beyond a reasonable doubt.

With regard to the evidence, the court noted: "The Court may consider evidence previously admitted at any prior hearing that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed in evaluating the issues presented in . . . a 1172.6 hearing; however, hearsay evidence that was admitted in a preliminary hearing pursuant to . . . [s]ection 872[,] sub[division] (b) is excluded as hearsay unless the evidence is admissible pursuant to another exception to the hearsay rule." The court then determined that Guzman's testimony regarding Ramos's statements were admissible against Ramos pursuant to Evidence Code section 1220 as admissions of a party. Based on those statements, the court determined Ramos was a major participant in the underlying burglary and acted with reckless indifference to human life. On that basis, Ramos's petition was denied.

As to petitioner, the court ruled:

"[O]n February 11th, 1999, [petitioner] entered into . . . a plea of no contest to murder and admitted that in committing the offense he personally used a firearm within the meaning of . . . [s]ection 12022.5[,] subdivision (a).

---

[4] The People also stated that petitioner "admitted to being the actual killer to a doctor in the psychiatric report contained in the court's file. That document has been admitted as evidence in this hearing by both parties, and is part of the record of conviction." Again, this document is not contained in the record on appeal.

There is no evidence in the record that [petitioner] used the gun in—in any way other than to fire the gun. There's no evidence that he threatened . . . Martinez with the weapon or battered her with the weapon. There's no evidence to support such a conclusion. The only evidence is the firearm was discharged, and that resulted in the death of . . . Martinez.

"By admitting that he personally used the firearm within the meaning of [section] 12022.5[,] sub[division] (a), [petitioner] necessarily admitted that he was the actual killer simply because there was no evidence presented at the hearing supporting any other scenario. Because there was no evidence or even an allegation that the gun in this case was used for any other purpose other than to shoot . . . Martinez, by admitting that he personally used the firearm in connection with the murder, [petitioner] admitted that he was the actual killer and may still be found guilty following the amendment of . . . [s]ection 189[,] sub[division] (e)[,] paragraph (1). [¶] The evidence is, beyond a reasonable doubt, that [petitioner] was a major participant to the felony of a residential burglary perpetrated with reckless indifference to human life; therefore, he may still be convicted pursuant to . . . [s]ection 189[,] sub[division] (e)[,] paragraph (3) notwithstanding [*sic*] the 2019 amendment to the statute.

"So the—all of these findings are made beyond a reasonable doubt, and the motion of [petitioner] is also denied."

## **DISCUSSION**

## I.      **Applicable Law Regarding Section 1172.6**

Effective January 1, 2019, the Legislature passed Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill No. 1437) "to amend the felony murder rule and the natural and probable consequences doctrine . . . to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f); accord, *People v. Strong* (2022) 13 Cal.5th 698, 707–708 (*Strong*).) The bill amended the natural and probable consequences doctrine by requiring that a principal act with malice aforethought before he or she may be convicted of murder. (§ 188, subd. (a)(3); accord, *People v. Gentile* (2020) 10 Cal.5th 830, 842–843 (*Gentile*).) The bill amended the felony-murder rule by providing that a participant

8.

in a qualifying felony is liable for murder only if the victim was a peace officer in the performance of his or her duties, or the defendant was the actual killer, aided and abetted the actual killer in the commission of first degree murder with the intent to kill, or was a major participant in the felony and acted with reckless indifference to human life. (§ 189, subds. (e), (f); accord, *Strong*, at p. 708.)

Senate Bill No. 1437 also added former section 1170.95, now renumbered as section 1172.6, which provides a procedure for persons convicted of "felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime" to seek vacatur of the conviction and resentencing. (§ 1172.6, subd. (a); accord, *Gentile*, *supra*, 10 Cal.5th at p. 853.) Under section 1172.6, an offender seeking resentencing must first file a petition in the sentencing court, and the sentencing court must determine whether the petitioner has made a prima facie showing that he or she is entitled to relief. (§ 1172.6, subds. (a)–(c); accord, *Strong*, *supra*, 13 Cal.5th at p. 708.) If the trial court determines the petitioner has made such a showing, "the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction and to resentence the petitioner on any remaining counts." (*Gentile*, at p. 853; accord, § 1172.6, subds. (c), (d)(1).)

At this evidentiary hearing, "the burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . under California law as amended by the changes to Section 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (d)(3).) The prosecutor and the petitioner may offer new or additional evidence to meet their respective burdens. The admission of evidence at the hearing is governed by the Evidence Code. However, the court also "may consider evidence previously admitted at any prior hearing or trial that is admissible under current law, including witness testimony, stipulated evidence, and matters judicially noticed," as

well as the "procedural history of the case recited in any prior appellate opinion." (§ 1172.6, subd. (d)(3).)

We review the trial court's findings following the evidentiary hearing for substantial evidence, and the application of those facts to the statute de novo. (*People v. Cooper* (2022) 77 Cal.App.5th 393, 412.)

## II. Admissibility of the Preliminary Hearing Transcript

Much of petitioner's briefing is dedicated to the admissibility of the preliminary hearing transcript, and particularly those portions wherein Guzman provided hearsay testimony regarding statements made by petitioner's co-perpetrators. We therefore generally discuss the admissibility of the preliminary hearing transcript before turning to the trial court's ruling.

At the evidentiary hearing, the admissibility of the preliminary hearing transcript is governed by section 1172.6, subdivision (d)(3). Section 1172.6, subdivision (d)(3) creates a hearsay exception allowing for admission of witness testimony that was admitted at any prior hearing. This includes witness testimony admitted at a preliminary hearing. (*People v. Davenport* (2023) 95 Cal.App.5th 1150, 1158–1163.) Section 1172.6 does not condition admissibility of the preliminary hearing transcript on whether a defendant stipulated to the transcript providing a factual basis for the plea.[5] (See § 1172.6, subd. (d)(3).)

---

[5] The cases cited by the parties that address the use of the preliminary hearing transcript in the section 1172.6 prima facie determination are inapposite. (*People v. Flores* (2022) 76 Cal.App.5th 974, 990–991; *People v. Nguyen* (2020) 53 Cal.App.5th 1154, 1161.) These cases do not concern the admissibility of the preliminary hearing transcript, but rather the extent to which the transcript may establish a petitioner's ineligibility for resentencing as a matter of law. However, at the evidentiary hearing stage, the court has already determined the record does not establish the petitioner's ineligibility for resentencing as a matter of law, and the court must resolve, as a factual matter, whether the petitioner is guilty of murder under a valid theory. (§ 1172.6, subd. (d)(3).)

The hearsay exception set forth in section 1172.6, subdivision (d)(3) is, however, subject to a significant limitation: "evidence that was admitted in a preliminary hearing pursuant to subdivision (b) of Section 872 shall be excluded from the hearing as hearsay, unless the evidence is admissible pursuant to another exception to the hearsay rule." (§ 1172.6, subd. (d)(3).) Section 872, subdivision (b) permits a law enforcement officer to testify at a preliminary hearing as to "statements of declarants made out of court offered for the truth of the matter asserted."

Although petitioner characterizes the preliminary hearing as a "section 872 preliminary hearing," significant portions of the preliminary hearing testimony were not hearsay, and were not admitted pursuant to section 872. For example, the officers' preliminary hearing testimony regarding their first-hand observations of the crime scene was not hearsay. This includes the testimony that Martinez was found dead in her bed with a head injury. A sliding glass door leading to her bedroom was broken. Four shell casings were found in and around the threshold. One spent bullet was found in Martinez's body, another in the headboard, and another in the closet.[6] A large brick was found on the foot of the bed. Her car was found in an orchard. No physical evidence tied petitioner to the crimes. This testimony was not admitted at the preliminary hearing pursuant to section 872, subdivision (b), and thus was not excluded from the broad hearsay exception contained in section 1172.6, subdivision (d)(3).

Guzman's testimony regarding petitioner's own statements was hearsay. However, there is no dispute that petitioner's statements to Guzman were admissible against petitioner at the preliminary hearing pursuant to Evidence Code section 1220. Because the statements were admissible pursuant to a hearsay exception other than that set forth in section 872, subdivision (b), they were admissible at the evidentiary hearing

---

[6] It is not clear from the record whether Guzman's testimony regarding the bullet found in Martinez's body was hearsay. In any event, as we discuss further below, we do not find this testimony dispositive.

11.

pursuant to section 1172.6, subdivision (d)(3). In these statements, petitioner denied any involvement in the offenses.

Of particular significance to this case is Guzman's testimony regarding the statements made by petitioner's co-perpetrators. We note the trial court did not hold these statements were admissible against petitioner. On appeal, the People contend the preliminary hearing transcript is admissible against petitioner to establish the minimum facts necessary to support the plea, but they do not contend such minimum facts are derived from the statements of petitioner's co-perpetrators.[7] Guzman's testimony regarding the statements of the co-perpetrators was plainly hearsay, and we have no argument before us suggesting the testimony was subject to any hearsay exception, other than section 872, subdivision (b). As such, the statements were inadmissible against petitioner at the evidentiary hearing pursuant to section 1172.6, subdivision (d)(3).

## III. Admission of Firearm Enhancement

The trial court found beyond a reasonable doubt that petitioner's plea to murder and admission of the firearm enhancement, when viewed alongside the preliminary hearing transcript, established that petitioner only used the firearm to commit the murder and thus was the actual killer. On appeal, the People do not contend the court's findings regarding petitioner's use of a firearm are supported by substantial evidence. We conclude the findings are not supported by substantial evidence.

Relevant here, petitioner pled no contest to murder (§ 187, subd. (a)), with the special allegation that he personally used a firearm in the commission of the offense

---

[7] We therefore do not address the parties' arguments regarding adoptive admissions. (Evid. Code, § 1221.) Evidence Code section 1221 permits admission of hearsay statements of which a party has manifested his or her adoption. Although the People contend "[s]tipulation to a factual basis made prior to the plea is an adoptive admission of the facts essential to the plea," the People have not pointed to any specific testimony they suggest was essential or that petitioner adopted by entering his no contest plea.

(§ 12022.5, subd. (a)). Petitioner does not dispute that his plea constitutes an admission of the elements of the charged offense. (*In re Chavez* (2003) 30 Cal.4th 643, 649.) "Murder is the unlawful killing of a human being . . . with malice aforethought." (§ 187, subd. (a).) "[B]efore Senate Bill No. 1437 malice could be imputed to a defendant under the felony-murder rule or the natural and probable consequences doctrine." (*People v. Rivera* (2021) 62 Cal.App.5th 217, 234, abrogated on another ground by *People v. Lewis* (2021) 11 Cal.5th 952, 962.) Thus, at the time of petitioner's plea, a plea to malice murder constituted a plea to "a generic charge" that permitted the prosecution to "proceed on *any* theory of murder," including felony murder or a natural and probable consequences theory.[8] (*Rivera*, at p. 234.) Accordingly, petitioner's plea, standing alone, does not establish that he committed the murder with actual malice or as the actual killer.

Likewise, his admission of personal use of a firearm, standing alone, does not establish he was the actual killer. (*People v. Young* (2005) 34 Cal.4th 1149, 1205; *People v. Jones* (2003) 30 Cal.4th 1084, 1120.) This is because a firearm may be used in different ways by a participant in offenses in which a murder results. (*People v. Garrison* (2021) 73 Cal.App.5th 735, 743–744 (*Garrison*).) For example, an armed robber who displays a gun to intimidate victims while a co-perpetrator shoots the victims may be found to have personally used a firearm in the commission of felony murder. (*Jones*, at

---

[8] In association with petitioner's plea, the felony-murder special circumstances were dismissed. These special circumstances allowed for imposition of a sentence of death or life without the possibility of parole for murders committed during a qualifying felony, where the defendant was either the actual killer, aided and abetted in the murder with intent to kill, or was a major participant in the felony and acted with reckless indifference to human life. (§ 190.2, subds. (a)(17), (b)–(d).) In contrast, the felony-murder rule imposed strict liability for all perpetrators or attempted perpetrators of enumerated felonies, regardless of their mens rea or role in the murder itself. (Former § 189.) Thus, dismissal of the felony-murder special circumstances did not eliminate felony murder as a potential theory in this case.

13.

p. 1120.)  Thus, whether a personal use allegation establishes a defendant is the actual killer depends on the particular facts of the case.  (*Ibid.*; *Young*, at p. 1205.)

Here, there is no admissible evidence regarding *how* petitioner may have personally used a firearm.[9]  As stated, four shell casings were found at the scene.  Spent bullets were found in different locations.  The admissible evidence did not establish whether petitioner was responsible for all these shots or merely some of them.  Accordingly, substantial evidence does not support the trial court's finding that petitioner's discharge of the firearm resulted in Martinez's death, and thus does not support the court's finding that the firearms evidence established, beyond a reasonable doubt, that petitioner was the actual killer.  (Cf. *People v. Young*, *supra*, 34 Cal.4th at p. 1205 [evidence that only one gun was used, and lack of evidence that anyone else used a gun, pointed to the defendant as the actual killer]; *People v. Jones*, *supra*, 30 Cal.4th at p. 1120 [evidence showed only the actual killer displayed and used a gun]; *Garrison*, *supra*, 73 Cal.App.5th at p. 744 [evidence demonstrated only one robber, the shooter, used a handgun].)

IV.    **Admission of Great Bodily Injury Enhancement**

The People present a new argument on appeal:  that petitioner's admission of the great bodily injury enhancement to counts two through four establishes that he was the actual killer.  According to the People, the only injuries suffered by the victim were the gunshot wounds that killed her.[10]

---

[9] Likewise, there is no admissible evidence regarding petitioner's role in the underlying felonies, and thus no evidence to support the court's finding that he was a major participant in those felonies.

[10] The admissible evidence on this point is not as conclusive as the People suggest.  Guzman testified that he observed "some kind of a wound" to Martinez's left temple.  Although the parties stipulated that the forensic pathologist would have testified that Martinez died of a gunshot wound to the cerebrum, this stipulation was entered into for purposes of the preliminary hearing only.

The People contend we may affirm on this basis, even though the argument was not considered by the trial court. In support, they cite appellate cases affirming a trial court's determinations on grounds that were dispositive as a matter of law. (*People v. Zapien* (1993) 4 Cal.4th 929, 976; *People v. Cortes* (2022) 75 Cal.App.5th 198, 204.) However, section 1172.6, subdivision (d)(3) requires "the trial court, acting as an independent fact finder, to determine beyond a reasonable doubt whether defendant is guilty of murder under a valid theory of murder." (*Garrison*, *supra*, 73 Cal.App.5th at p. 745.) Where the trial court's independent factual findings are unsupported, we may not uphold its ruling simply by supplanting additional or alternative factfinding of our own. (Cf. *People v. Guiton* (1993) 4 Cal.4th 1116, 1128–1129 [reversal required where record contains affirmative indication that trier of fact's determination rested on a factual theory unsupported by the evidence].) We must reject this argument because it was not considered by the trial court.

In light of the foregoing, we conclude the court's denial of the petition is not supported by substantial evidence. Accordingly, we will reverse the order denying the petition and remand for further proceedings. We therefore do not consider petitioner's argument that the trial court abused its discretion in failing to consider his youth at the time of the offenses.

## DISPOSITION

The order denying the petition is reversed and the matter is remanded for further proceedings pursuant to section 1172.6.

15.